ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| COMCAST of Dallas, Inc. ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION No. 3:03-CV-0014-M |
| Two Girls In Texas Inc., a Texas corporation, ) | |
| Products By Omega Star Inc., a Texas ) | **Honorable Judge Barbara Lynn** |
| corporation, Rebecca A. Gutierrez a/k/a Becky, ) | |
| individually, Sharla N. Gutierrez, individually, ) | |
| Joshua Diaz, individually, Catherine M. Moon, ) | |
| individually and Daniel Martinez, individually, ) | |
| ) | |
| Defendants. ) | |

## AMENDED COMPLAINT

The Plaintiff, COMCAST of Dallas, Inc. ("COMCAST" or "Plaintiff"), by its attorneys, Michael Gray of Charles Michael Gray, P.L.L.C and Coman & Anderson, P.C., and for its Complaint against Two Girls In Texas Inc., a Texas corporation, Products By Omega Star Inc., a Texas corporation, Rebecca A. Gutierrez a/k/a Becky, individually, Sharla N. Gutierrez, individually, Joshua Diaz, individually, Catherine M. Moon, individually, and Daniel Martinez, individually (collectively "Defendants"), alleges the following:

### SUMMARY OF CLAIMS

1. This action seeks declaratory injunctive relief and monetary damages on account of Defendants statutorily prohibited manufacture, modification, sale and/or distribution of "pirate" cable television descrambling devices and equipment (hereinafter "pirate" decoders or descramblers) into the "black market" for the theft and unauthorized reception of Plaintiff's cable television programming services. The Defendants have been and are in the business of manufacturing, modifying, selling or otherwise distributing "pirate" descrambling devices for the unauthorized interception and theft of Plaintiff's cable television programming services and have

559116

aided and assisted in the use of such equipment in direct violation of 47 U.S.C. § 553, *et seq.* This Complaint also states pendent state claims under Texas law for a constructive trust claim.

## PARTIES

### The Plaintiff

2. At all times hereinafter mentioned, COMCAST of Dallas, Inc. is a Texas corporation with its principal place of business in Texas at 2951 Kinwest Parkway, Irving, Texas 75063.

### The Defendants

3. At all times hereinafter mentioned, Defendant, Rebecca A. Gutierrez a/k/a Becky is one of the owners of Two Girls In Texas and Omega Star Products.

4. At all times hereinafter mentioned, Defendant Sharla N. Gutierrez is one of the owners of Two Girls In Texas and Omega Star Products.

5. At all times hereinafter mentioned, Defendants Joshua Diaz, Catherine M. Moon and Daniel Martinez are or were employees/co-owners of Two Girls In Texas and Omega Star Products.

6. At all times hereinafter mentioned is a resident of the state of Texas residing at, Defendant Rebecca A. Gutierrez a/k/a Becky 1711 Sutters Mill Drive, Carrollton, TX 75007.

7. At all times hereinafter mentioned, Defendant Sharla N. Gutierrez is a resident of the state of Texas residing at 1711 Sutters Mill Drive, Carrollton, TX 75007.

8. At all times hereinafter mentioned, Defendant Joshua Diaz is a resident of the state of Texas residing at 711 Monroe Drive, Duncanville, TX 75137 or at 1711 Sutters Mill Drive, Carrollton, TX 75007.

9. At all times hereinafter mentioned Defendant Catherine M. Moon is a resident of the state of Texas residing at 1008 Briarwood Drive, Lewisville, TX 75067.

10. At all time hereinafter mentioned, Defendant Daniel Martinez is a resident of the state of Texas residing at 14501 Montfort Drive, #42222, Dallas, TX 75420.

11. Two Girls in Texas has a principal place of business address at 1035 N. I-35E, #213, Carrollton, TX 75006 and a business address at 1711 Sutters Mill Drive, Carrollton, TX 75007.

12. Products by Omega Star has a principal place of business address at 1039 N. I-35E, #309, Carrolton, TX 75006 and a business address at 1711 Sutters Mill Drive, Carrollton, TX 75007.

## FACTUAL BACKGROUND

### The Cable Operator

13. At all times relevant hereto, Plaintiff was and is the owner and operator of a cable television system used for the signal reception, generation and transmission of video programming to subscribers within the State of Texas pursuant to a franchise to operate the cable system. COMCAST offers cable television services to subscribers who request and pay for them.

14. Plaintiff's programming is offered to its subscribers in "packages" of programming services. "Basic" and "Standard" tiers are packages of programming services that a Subscriber receives at a monthly rate.

15. Subscribers may also elect to purchase certain premium programming services such as Cinemax, Home Box Office and Showtime, for an additional monthly charge per service.

16. Additionally, Plaintiff offers Pay Per View programming, a service enabling subscribers to purchase individual movies, sporting events, or other entertainment for a per event fee over and above the subscriber's regular monthly fee.

17. Each subscriber is entitled to receive only the level of programming services that he or she selects and purchases.

18. The signals for all of Plaintiff's cable television services are transmitted from their point of origin to COMCAST's reception facilities from orbiting satellites and other means of over-the-air radio communication. Plaintiff then retransmits these signals from its reception facilities to subscribers' homes through a network of cable wiring and equipment (the "System"). In order for a subscriber to receive these transmitted cable television signals on his or her television set, Plaintiff provides its subscribers with a device known as a "converter," which converts the multiple signals simultaneously transmitted over the System into different "channels" which can be viewed on subscribers' television sets.

19. To prevent subscribers from receiving programming services for which they have not paid, Plaintiff encodes or "scrambles" the signals for specific programming services. Subscribers purchasing scrambled programming services are provided with a device known as a "decoder," which is incorporated into the converter. The decoder decodes the scrambled service so that the programming selected and purchased can be viewed clearly on a subscriber's television set. Programming services not purchased will continue to be scrambled and therefore will not be viewable on the subscriber's television set.

20. Plaintiff's system is "addressable," which means that subscribers' decoders are programmed by a central computer to authorize viewing of purchased services. Each subscriber who purchases services that are scrambled would have his or her decoder programmed by Plaintiff's central computer to receive only those services selected and purchased.

21. Encoding ("scrambling") is a security method employed by Plaintiff and other cable television operators to prevent subscribers from receiving services for which they have not paid.

22. It is possible for a dishonest individual to install an unauthorized or "pirate" descrambling device onto the Plaintiff's cable television systems or otherwise tamper with

Plaintiff's equipment in order to receive all of Plaintiff's scrambled programming without authorization and without making payment therefor.

23. Pay Per View, which is one of the scrambled services, includes selections that typically range in cost from approximately $4.00 to $49.99. Pay Per View is available throughout the day on a per event or movie basis. Premium services range in cost from approximately $7.00 to $13.00 per month per service. Hence, a "pirate" descrambling device could conceivably steal hundreds of dollars worth of Plaintiff's premium and Pay Per View services each month.

24. Theft of Plaintiff's cable television service impacts negatively on Texas, which franchises it to operate cable television systems and which derives franchise fees from COMCAST's gross revenues. The lost cash flow to COMCAST resulting from the sale and use of a "pirate" descrambling device has an adverse impact on its ability to purchase and maintain a high quality of programming services for its subscribers. Furthermore, the maintenance of unauthorized connections and use of "pirate" descrambling devices could result in signal "leakage," which could violate FCC regulations, as well as degradation of COMCAST's signal and other service problems, and for which Plaintiff may suffer the imposition of substantial fines and other sanctions.

25. Plaintiff's cable television programming services are private telecommunication signals that are not intended for public use or enjoyment without Plaintiff's prior authorization.

### Defendants' Misconduct

26. Defendants, Two Girls In Texas Inc., a Texas corporation, Products By Omega Star Inc., a Texas corporation, Rebecca A. Gutierrez a/k/a Becky, individually, Sharla N. Gutierrez, individually, Joshua Diaz, individually, Catherine M. Moon, individually, and Daniel Martinez, individually have been engaged in a scheme to illegally manufacture, modify, sell and/or distribute "pirate" cable television descrambling equipment for their private financial

gain. The Defendants illegally manufactured, modified, sold and/or distributed "pirate" descrambling equipment to sub-distributors, purchasers and other end-users of such equipment with the specific intent and knowledge that such equipment would be used to decode the scrambled programming services of the Plaintiff by persons not paying for those services and not authorized to receive the same.

27. The Defendants have engaged in the prohibited manufacture, modification, sale and/or distribution of "pirate" descrambling devices. The Defendants are liable to the Plaintiff for their violations of 47 U.S.C. section 553(a)(1) *et seq.*, and for Plaintiff's constructive trust claims that are the subject of this action.

28. Each "pirate" descrambling device sold or distributed by the Defendants can circumvent the security functions of Plaintiff's System designed to protect its programming services from theft and unauthorized reception. Each "pirate" descrambling device sold or distributed by the Defendants has the illicit function of descrambling all premium programming offered on the Plaintiff's System, including Pay Per View services, for persons not authorized to receive said programming. The Defendants knew of the illicit functions of the "pirate" descrambling devices that they manufactured, sold or distributed, and Defendants intended that the devices would intercept and receive Plaintiffs cable television programming services without Plaintiff's authorization. The "pirate" descrambling devices manufactured, sold and/or distributed by the Defendants cannot readily be detected by Plaintiff once connected to its cable System.

29. During the investigation of another illegal distributor of cable descramblers, (AT&T Broadband v. Cable Concepts, Tim Williams, individually and Renee Williams, individually, et al., OH Case No. C-1-02-336, J. Beckwith) information relating to Defendants was discovered. This information demonstrates that the Defendants in the Ohio case purchased

equipment from these Defendants which was used to assist their illegal distribution of cable descramblers from Ohio.

30. The Defendants' descramblers sell for $129.00 - $180.00.

31. The Defendants' instruct purchasers on how to determine the type of descrambling equipment that is compatible with the descrambling equipment being used by the cable company that services the purchaser's area. These instructions are given personally over the telephone and are included on page one of the Defendants' website. This determination is necessary in order for Defendants to sell the purchaser equipment that will descramble that particular cable company's channels.

32. Telephone numbers registered to Defendants include (877) 698-8448 and (800) 342-6174. Defendants answer calls to these numbers and identify themselves as Two Girls in Texas and also Omega Star Products when questioned. Defendants take orders for illegal cable descrambling devices over these lines. Defendants also operate a website, "www.tgitcable.com" over which information about their products may be obtained.

33. Upon taking an order for the illegal descrambling equipment, Defendants give explicit instructions to customers regarding payment procedures and the necessity of making payments to the order of "OSP" (Omega Star Products).

## COUNT I

**Violations of the Communications Act of 1934 – 47 U.S.C. § 553**

34. Plaintiff incorporates by reference paragraphs 1 through 33 inclusive as if fully set forth herein.

35. The Defendants have been engaged and continue to be engaged in the manufacture, sale and/or distribution of "pirate" cable television descrambling devices, intending and knowing that such equipment is used in the unauthorized decryption, interception and receipt of Plaintiff's cable television programming services. Defendants' manufacture, sale and/or

distribution of "pirate" cable television descrambling devices for the theft and unauthorized reception of Plaintiff's cable television services is in violation of section 553 (a)(1) of the Communications Act, Title 47 of the United States Code.

36. The "pirate" descrambling devices and equipment manufactured, sold and/or distributed by the Defendants are specifically designed and intended to descramble the Plaintiff's encoded programming services without authorization, thereby permitting reception of the Plaintiff's programming without payment for those services. Said conduct violates 47 U.S.C. section 553 (a)(1).

37. By using a "pirate" cable television descrambling device received from the Defendants, a dishonest individual may view the highest level of Plaintiff's cable television programming services, including premium and Pay Per View, without paying the monthly or per event fee for said programming or only paying a fee for a minimum level of service.

38. Plaintiff's cable television programming services which are intercepted and stolen by the "pirate" descrambling equipment that the Defendants have manufactured, distributed and/or sold are communications offered over a cable system under 47 U.S.C. section 553 (a) which are protected from unauthorized interception and theft thereunder.

39. The Defendants violated the Communications Act willfully and for the purposes of their direct or indirect commercial advantage and/or private financial gain.

40. Plaintiff has not authorized or consented to the manufacturing, assembling, modifying, importing, exporting, marketing, selling, delivering, furnishing, shipping, renting, repairing, distributing, leasing or use by the Defendants of the aforementioned electronic equipment, nor has the Plaintiff authorized or consented to the rendering of assistance by the Defendants in the reception or interception of its cable television programming services without its authorization.

41. The Plaintiff is a "person aggrieved" by the Defendants' violations of the Communications Act, and is authorized to institute this action against the Defendants under 47 U.S.C. section 553 (c)(1) for violations of section 553 (a)(1) of the Communications Act.

42. The Defendants' violations have injured and will continue to injure Plaintiff's ability to maximize its revenues by depriving it of the benefit of subscribers to its programming services and by injuring its goodwill and reputation. As a further result of such violations, Defendants have gained and will continue to gain unjust enrichment.

43. Moreover, honest paying subscribers may have their services negatively affected as a result of Defendants' violations. Furthermore, Defendants' violations could result in signal leakage, which poses a threat to public safety.

44. Upon information and belief the Defendants will continue to violate 47 U.S.C. section 553. The Defendants knew or should have known that the modification, sale or other distribution of such electronic equipment was prohibited by law. Such violations of the Communications Act have caused and will continue to cause Plaintiff irreparable harm. In addition to diminishing Plaintiffs revenues, the Defendants' unlawful conduct injures Plaintiff's reputation and goodwill, its ability to attract and finance the future acquisition of quality services, and further impairs its ability to enhance its future growth and profitability.

## COUNT II
### (Manufacture of and Traffic in Signal Theft Devices in Violation of the Digital Millenium Copyright Act, 17 U.S.C. § 1201(a)(2))

45. Plaintiff incorporates by reference paragraphs 1 through 44 inclusive as if fully set forth herein.

46. Defendants were and are actively engaged in the manufacture, modification, sale and/or distribution of "pirate" descrambling devices and/or were and are assisting in the prohibited manufacture, modification, sale and/or distribution of "pirate" descrambling devices

knowing or having reason to know that such devices (a) are primarily designed or produced for the purpose of circumventing the security functions of plaintiff's cable System, (b) have only limited or no commercially significant purpose or use other than to circumvent plaintiff's security functions or (c) are marketed by defendants and persons acting in concert with defendants for use in circumventing plaintiff's security functions, in violation of 17 U.S.C. § 1201(a)(2).

47. Defendants' violations have injured and will continue to injure Comcast by depriving Comcast of subscription and pay-per-view revenues and other valuable consideration, compromising Comcast's security and accounting systems, infringing Comcast's trade secrets and proprietary information, and interfering with Comcast's contractual and prospective business relations.

48. Defendants have violated Section 1202(a)(2) of the Digital Millenium Copyright Act willfully and for purposes of commercial advantage or private financial gain.

49. Defendants knew or should have known that the manufacture, modification, sale and/or distribution of "pirate" descrambling devices and/or are assisting in the prohibited manufacture, modification, sale and/or distribution of "pirate" descrambling devices was illegal and prohibited, especially as all Defendants have been involved in this type of litigation in the past. Such violations have caused and will continue to cause Comcast irreparable harm, and Comcast has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendants will continue to violate 17 U.S.C. § 1201(a)(2).

### COUNT III
### (Manufacture of and Traffic in Signal Theft Devices in Violation of the Digital Millenium Copyright Act, 17 U.S.C. § 1201(b)(1))

50. Plaintiff incorporates by reference paragraphs 1 through 49 inclusive as if fully set forth herein.

51. Defendants were and are actively engaged in the manufacture, modification, sale and/or distribution of "pirate" descrambling devices and/or were and are assisting in the prohibited manufacture, modification, sale and/or distribution of "pirate" descrambling devices knowing or having reason to know that such devices (a) are primarily designed or produced for the purpose of circumventing the security functions of plaintiff's cable System, (b) have only limited or no commercially significant purpose or use other than to circumvent plaintiff's security functions or (c) are marketed by defendants and persons acting in concert with defendants for use in circumventing plaintiff's security functions, in violation of 17 U.S.C. § 1201(b)(1).

52. Defendants' violations have injured and will continue to injure Comcast by depriving Comcast of subscription and pay-per-view revenues and other valuable consideration, compromising Comcast's security and accounting systems, infringing Comcast's trade secrets and proprietary information, and interfering with Comcast's contractual and prospective business relations.

53. Defendants have violated Section 1202(b)(1) of the Digital Millenium Copyright Act willfully and for purposes of commercial advantage or private financial gain.

54. Defendants knew or should have known that the manufacture, modification, sale and/or distribution of "pirate" descrambling devices and/or are assisting in the prohibited manufacture, modification, sale and/or distribution of "pirate" descrambling devices was illegal and prohibited, especially as all Defendants have been involved in this type of litigation in the past. Such violations have caused and will continue to cause Comcast irreparable harm, and Comcast has no adequate remedy at law to redress any such continued violations. Unless restrained by this Court, defendants will continue to violate 17 U.S.C. § 1201(b)(1).

**COUNT IV**

**Pendent State Claim for Unjust Enrichment**

55. Plaintiff incorporates by reference paragraphs 1 through 54 inclusive as if fully set forth herein.

56. Defendants have ursurped for themselves trade secrets, proprietary information, revenues, and other property rights belonging to Comcast for the purpose of enhancing the commercial value of defendants's goods.

57. As a direct and proximate result of their unlawful and improper acts, defendants have been unjustly enriched and Comcast has suffered, and will continue to suffer, loss of profits by virtue of defendants' conduct. The exact amount of unjust profits realized by defendants and profits lost by plaintiff Comcast are presently unknown to it and cannot be readily ascertained without an accounting.

58. Defendants manufacture, modification, sale and/or distribution of "pirate" descrambling devices and/or are assisting in the prohibited manufacture, modification, sale and/or distribution of "pirate" descrambling devices, and their ursurpation of Comcast's trade secrets, proprietary information, revenues and other property rights belonging to Comcast, is causing and will continue to cause irreparable injury to them unless defendants are preliminary and permanently restrained and enjoined from this activity.

## COUNT V

**Claim for Imposition of Constructive Trust**

59. Plaintiff incorporates by reference paragraphs 1 through 58 inclusive as if fully set forth herein.

60. The devices sold and/or distributed by the Defendants allow purchasers thereof to receive all of Plaintiff's cable television programming services, including premium and Pay Per View programming services, without payment to Plaintiff therefor.

61. Defendants' sales and distributions of "pirate" descrambling devices to Plaintiff's subscribers diverts to the benefit of the Defendants those revenues and profits otherwise accruing to Plaintiff from its provision of premium and Pay Per View programming services to its subscribers.

62. All amounts received by Defendants from their sales and/or distributions of "pirate" descrambling devices to Plaintiff's subscribers represent revenues and profits otherwise accruing to Plaintiff.

63. The Defendants are unjustly enriched by the diversion of revenues and profits to them, as described in the preceding paragraph. This unjust enrichment is enjoyed at the expense of and to the detriment of the Plaintiff.

64. The amount received by the Defendants which represent diversion of profits and revenues due and owing to Plaintiff, together with all gains received by Defendants from their transfer or use, or any property substituted by Defendants therefor, in equity and good conscience belong to Plaintiff.

**WHEREFORE,** the Plaintiff, COMCAST of Dallas, Inc., requests that this Court grant the following relief:

(1) Declare that the defendants' unauthorized manufacture, modification, sale and/or distribution of "pirate" cable television descrambling equipment designed known or intended to decode plaintiff's cable television programming signals without plaintiff's authorization violated 47 U.S.C. § 553(a)(1) and 17 U.S.C. § 1201(a) and (b) and that such violations were committed willfully and for purposes of defendants' direct or indirect commercial advantage and/or private financial gain;

(2) In accordance with 47 U.S.C. § 553 (c)(2)(a) and 17 U.S.C. § 1203(b)(1) enjoin the defendants, their agents, servants, employees, affiliated business entities, assigns and those controlled directly or indirectly by any of them from the manufacture, modification, sale,

distribution, advertisement for and/or use of electronic equipment designed for the unauthorized interception of cable television service;

(3) In accordance with 47 U.S.C. § 553(c)(2)(B), award the plaintiff against the defendants, either:

(a) the actual damages which the plaintiff has suffered, together with any additional profits earned by defendants as a result of defendants' unauthorized manufacture, modification, sale and/or distribution of "pirate" cable television descrambling devices; or alternatively at plaintiffs election,

(b) statutory damages between $250 and $10,000 for each prohibited "pirate" descrambling device sold and/or distributed by the defendants in violation of 47 U.S.C. §553(a)(1), and,

(c) an additional sum of statutory enhanced damages of up to $50,000 pursuant to 47 U.S.C. § 553(c)(3)(B) for each violation of 47 U.S.C. § 553(a)(1);

(4) In accordance with 17 U.S.C. § 1203(c)(2) and (3)(A), award the plaintiff against the defendants, the greater of either:

(a) the actual damages which the plaintiff has suffered, together with any additional profits earned by defendants as a result of defendants' unauthorized manufacture, modification, sale and/or distribution of "pirate" cable television descrambling devices; or alternatively at plaintiffs election,

(b) statutory damages in the amount of up to $2,500 for each prohibited "pirate" descrambling device sold and/or distributed by the defendants in violation of 17 U.S.C. § 1203(a)(2) and (b)(1), and,

(5) In accordance with 47 U.S.C. § 553 (c)(3)(A)(i) order an accounting of all profits and expenses realized by defendants in violation of the foregoing statutes, together with defendants' production of all records reflecting sales of their "pirate" descrambling devices;

(6) In accordance with the equitable remedy of constructive trust, order that the full value of services converted by virtue of defendants' "pirate" cable television descrambling device sales operation be ordered returned by the defendants to plaintiff; and

(7) Pursuant to 47 U.S.C. § 553 (c)(2)(A) order the defendants' surrender and permanent transfer and ownership to plaintiff of their descrambling devices, invoices, business records and other tools of their illegal business; and

(8) In accordance with 47 U.S.C. § 553(c)(2)(C) and 17 U.S.C. § 1201(b)(3) and (4) direct defendants to pay plaintiff all of plaintiff's full costs, including reasonable attorneys' fees and investigative expenses; and

(9) Grant such other and further relief as is just.

Respectfully submitted,
**COMCAST of Dallas, Inc.,**

By: /s/ Charles Michael Gray

Charles Michael Gray

Charles Michael Gray SBT No. 08314900
Charles Michael Gray, PLLC
6801 Snider Plaza
Suite 220
Dallas, TX 75205
214-824-7660 (phone)
214-824-7662 (fax)

Jeffrey R. Platt ARDC No. 06208148
Maureen A. Beck ARDC No. 06274541
COMAN & ANDERSON, P.C.
Attorneys at Law
Three First National Plaza, Suite 3600
312-977-4385 (phone)
312-977-4405 (fax)
(Admitted Pro Hac Vice)

## CERTIFICATE OF SERVICE

I, Charles Michael Gray state that I caused a copy of the foregoing **Plaintiff's Amended Complaint** to be served upon on counsel for Defendants in accordance with the requirements of the Federal Rules of Civil Procedure this 14th day of March, 2003.

_____
Charles Michael Gray